**Demetrios FRUDAKIS, Plaintiff,**

v.

**SUFFOLK COUNTY DEP'T OF PUBLIC WORKS and the County of Suffolk, Defendants.**

No. 00–CV–4153 (TCP).

United States District Court, E.D. New York.

May 9, 2001.

Brian K. Saltz, Farmingdale, NY, for Plaintiff.

## MEMORANDUM AND ORDER

PLATT, District Judge.

On December 8th, 2000 defendants moved to dismiss plaintiff's Complaint and plaintiff cross-moved to amend the same. This Court granted defendants' motion as to plaintiff's claim under the ADA, but denied defendants' motion with respect to all other claims. This Court granted plaintiff's motion to amend his Complaint.

Defendants County of Suffolk and the Department of Public Works moved again on March 9, 2001 to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants' motion to dismiss must be and the same hereby is granted as to plaintiff's claim under the ADA. Defendants' motion to dismiss is denied as to plaintiff's claim under the NYHRL.

## BACKGROUND

Plaintiff Demetrios Frudakis is a resident of New York, County of Suffolk and was employed by Suffolk County Department of Public Works, Design and Construction ("Suffolk County DPW") which was then and is still a department of the County of Suffolk. Defendant County of Suffolk is a municipal corporation.

Frudakis claims that he is disabled and suffers from panic attacks, has a fear of being in enclosed spaces and has a permanent injury to his left shoulder. He began employment with defendants on or about

September 26, 1996 as an Architectural Drafter.

On November 2, 1998, Frudakis was appointed to the position of Architectural Drafter 1, in the non-competitive classification, pursuant to N.Y. Civil Service Law Sec. 55–a. In this position, Frudakis' main duties were to draw up plans and go out to job sites. In Frudakis' Complaint he states that he performed these job functions properly and received praise for his performance.

In late November 1998, Frudakis broke his clavicle in a car accident. Upon his return to work, he was assigned to work in the print room, an enclosed area without windows or ventilation, which caused him to suffer panic attacks.

On February 3, 1999, Frudakis provided defendants with a letter from his psychiatrist informing them that working in the print room would exacerbate his panic attacks. In the letter, the psychiatrist asked defendants to avoid placing Frudakis in the print room during his treatment. Despite this letter, defendants continued to ask Frudakis to make prints in the print room.

On February 17, 1999, Frudakis provided defendants with a letter from his orthopedic surgeon advising that he had difficulty moving his left arm and shoulder and seeking a reasonable accommodation. Despite this letter, defendants continued to require Frudakis to carry "spec" books weighing approximately 15 pounds.

On April 19, 1999, defendants provided Frudakis with a letter stating that, based upon an evaluation by the County of Suffolk Medical Review Office, he would not be required to use the print room. Despite that letter, on May 4, 1999, Frudakis' supervisor asked him to make prints for him. When Frudakis complained to Commissioner Charles Bartha about defen-

dant's failure to accommodate him, Bartha responded that he was very disappointed in Frudakis.

On June 1, 1999, Frudakis filed a complaint with the New York State Division of Human Rights and EEOC alleging that defendants failed to accommodate his disability.

Despite this complaint, defendants continued to ask Frudakis to make prints in the print room and carry heavy books, rather than to draw up plans and go to job sites. On September 19, 1999, after Frudakis' supervisor again asked him to make copies in the print room, Frudakis suffered a panic attack.

On October 4, 1999, Commissioner Bartha called Frudakis into a meeting with himself, Frudakis' supervisor, the County of Suffolk Architect and a representative from personnel. During the meeting, Frudakis advised that he would be able to make prints if the machine was moved out of the print room. That accommodation was never made.

During the same meeting, Bartha asked Frudakis when his probationary period would end, and Frudakis told him November 2, 1999. On October 15, 1999, defendants terminated Frudakis' employment.

Since his termination, Frudakis has sought other employment. In February 2000, Frudakis claims he was practically offered a job until the employer called back to ask Frudakis why he did not state that he was in litigation. Frudakis found other employment in July 2000.

On July 11, 2000, Frudakis filed suit alleging defendants failed to accommodate him under the ADA, and the NYHRL, and defendants retaliated against him, in violation of the ADA and NYHRL. Frudakis requests that his employment be reinstated with full back pay, benefits and inter-

est, and that defendants accommodate him, and pay damages.

## MOTION TO DISMISS STANDARD

### Rule 12(b)(6) Motion to Dismiss

■ Dismissal is warranted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957)). "This caution applies with greater force where the complaint is submitted pro se or the plaintiff alleges civil rights violations." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).

■ In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and draw all inferences in favor of the nonmoving party. *See Wynn v. Uhler*, 941 F.Supp. 28 (N.D.N.Y.1996). The complaint, however, must "give defendants fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99.

## DISCUSSION

At oral argument on December 8, 2000, this Court denied defendants' motion to dismiss the NYHRL claims (which were raised in the original Complaint). Thus, the only issue in the instant action is whether plaintiff's Amended Complaint adequately states a claim under the ADA.

■ Defendants correctly argued on December 8th that plaintiff's Complaint did not adequately state the elements under the ADA. Specifically, while plaintiff enumerated his ailments in his Complaint,

he did not indicate whether and how such impairments substantially limit a major life activity, which is necessary for an ADA claim. *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Sacay v. Research Foundation of City University of New York*, 44 F.Supp.2d 496 (E.D.N.Y.1999); 42 U.S.C. § 12102(2).

■ Plaintiff's Amended Complaint suffers from the same shortcoming. While it includes an additional paragraph (number nine (9)) which lists plaintiff's "limitations and conditions," there is no claim or any indication that such limitations affect major life activities. Thus, plaintiff's Complaint does not adequately set forth the factors necessary to state a claim under the ADA sufficient to defeat a motion to dismiss

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's Amended Complaint must be and the same hereby is granted with respect to Frudakis' ADA claim.

Thus, there being no federal claims remaining against defendants, this case is transferred to Supreme Court, Suffolk County, for further proceedings.

SO ORDERED.